IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 6 2014

David J. Bradley, Clerk of Court

Jesus Mendoza, Pro-se
Plaintiff                        Civil Action No.

V.                               B = 14 - 030
                                 Jury Demand.

U.S. District Chief Judge Ricardo H. Hinojosa,
U.S. Magistrate Judge Peter E. Ormsby, the
U.S. Department of Education, the Secretary of
the U.S Department of Education, Arne Duncan,
the Texas Attorney General, Greg Abbott, the
District Court of Hidalgo County, Texas, the
92nd Judicial District, the Court of Appeals
thirteenth District of Texas; the Texas
Department of Assistive and Rehabilitative
Services; Ricardo P. Rodriguez Jr.; and
Abel Hinojosa; Defendants.

# PLAINTIFF'S ORIGINAL COMPLAINT

1

1. I, Pro-se Plaintiff, Jesus Mendoza am a citizen of the United States of America, and I line with my three minor children, KI, IB and KV at 2202 E. 28th St., Mission, Texas 78574, Tel. (956)529-7140 KI is 9 years old, IB is 12 years old and KV is 14 years old.

2. My wife, the mother of my children, Silvia Mendoza filed for divorce in June of 2011, she still lives in my home and we have joint custody of our children.

3. I am suffering a life-threatening, painful and debilitating electrohypersensitivity, EHS. My children suffer of the same condition to a lesser degree and their condition is progressively aggravating by the radiation exposures at school. This law suit is another effort to prevent that their health condition becomes, as in my case, life-threatening.

4. Attached as Exhibits 1A to 7C to this Complaint is medical documentation describing some aspects of our condition and some of the visible effects caused on us by exposure to radiation.

5. I have been home bound for more than 2 years, and I lost the ability to use a modified low emission laptop to draft documents, and aggravation of my health condition has delayed the filing of this law suit for more than a year.

6. I declare under penalty of perjury that unless otherwise noted, the Exhibits in support of this Complaint are a true and correct copy of the originals.

7. this Complaint cites to specific, concrete and undisputed evidence and claims on the record proving that my children have a medical history of the same harm caused by exposure to radiation and of EHS, and that my children's EHS and health condition is progressively aggravating to life-threatening.

8. this Complaint cites to specific, concrete and undisputed evidence and claims on the record proving that at my children's school, students and teachers are being exposed to power levels of radiation that cause severe physical harm, including EHS and learning impairments; that these exposures cause greater harm to children with pre-existing health conditions and disabilities and to children with EHS, and proving that these exposures are responsible for the high rate of student and teacher sickness, absenteeism and poor academic performance and for the many former and current students suffering life-threatening and terminal diseases.

9. This Complaint cites to specific, concrete and undisputed evidence and claims on the record proving that school officials, in retaliation for denouncing their attempts to conceal the school's dangerous radiation and the many children suffering EHS, refused to follow the doctors' directions to seat my children not in close proximity to sources of radiation, to transfer my children to another school and to provide education instruction at home; and proving Defendants' retaliation against my children and myself for denouncing their fraud on the Courts to conceal the harm caused by exposure to radiation, to conceal that these exposures defeat the purpose of education and to benefit their private agenda, the private agenda of the Executive and others.

3

10. The Defendants in this law suit are:
The United States District Chief Judge of the U.S.
District Court for the Southern District of Texas,
Ricardo H. Hinojosa; U.S. Magistrate Judge Peter E.
Ormsby; the U.S. Department of Education; the
Secretary of the U.S Department of Education,
Arne Duncan; the Texas Attorney General, Greg
Abbott; the District Court of Hidalgo County, Texas,
the 92nd Judicial District; The Court of Appeals
Thirteenth District of Texas; the Texas Department
of Assistive and Rehabilitative Services; Ricardo P.
Rodriguez Jr; and Abel Hinojosa.

11. Jurisdiction. this Court has Jurisdiction in this
case. Chief Judge Hinojosa and Judge Ormsby are being sued in
their official capacity and for prospective injunctive
relief under 28 U.S.C 1361 and in their individual
capacity under Binens. (federal question under 28 USC 1361)

12. this law suit seeks, among other relief, an order to
compel Chief Judge Hinojosa and Judge Ormsby to recuse
from Jesus Mendoza Maldonado v. Michael J. Astrue,
Commissioner of Social Security, Civil Case No. M-05-133
(S. D. TX. 2005); and from Jesus Mendoza v. Sharyland et al.
Independent School District et al., Civil Case No. M-11-29,
(S. D. TX. 2011), on the ground that specific, concrete, and undisputed
evidence on the record demonstrates that Chief Judge Hinojosa and
Judge Ormsby have committed fraud on the Court to support rulings
on those cases, and on retaliation, and on a conspiracy
to conceal the harm caused on school children by exposures to radiation.

4

13. This Complaint details how, in retaliation for denouncing their fraud on the Court to support rulings and to dismiss cases of harm caused by exposure to radiation, Chief Judge Hinojosa and Judge Ormsby adopted SISD officials claims that my children are healthy children to support denials of my motions to compel SISD officials to follow the doctors directions to seat my children not in close proximity to sources of radiation, to transfer my children to another school and to school my children at home, despite specific, concrete, and undisputed evidence and claims demonstrating that the SISD statements are false, demonstrating the progressive aggravation of my childrens health condition and electrical sensitinty, and demonstrating that SISD officials refusal to follow the doctors' directions to seat my children not in close proximity to sources of radiation, to transfer my children to another school, and the refusal to provide instruction at home is retaliation for denouncing that SISD officials are exposing school children to dangerous radiation, and for denouncing that these exposures are responsible for the high rate of student and teacher sickness, absenteeism, and poor academic performance, and for the many current and former students suffering life-threatening, and terminal diseases.

5

14. This Complaint details how Chief Judge Hinojosa and Judge Ormsby fraud on the Court is part of conspiracy with Defendants to conceal the harm caused on school children by exposures to radiation, to advance their private agendas, and the private agendas of the Executive and others, who are in the process of introducing a massive amount of radiation into schools, while lowering the academic requirements to conceal the harm caused by these technologies on children's minds and bodies, to conceal that these exposures cause greater harm on children with electrical sensitivities, on children with compromised immune systems, on children with disabilities and on children with learning impairments, and to conceal that these radiation exposures defeat the purpose of education, and violate the children's clearly established rights including right to due process, bodily integrity, and right to be free form disability discrimination, and violate parents' clearly established rights including due process, and right to rear children.

15. This Complaint details how Chief Judge Hinojosa and Judge Ormsby fraud on the Court and retaliation violate my children's and my rights including the right to speech, due process, right to access and petition the Court, right to an impartial trier of fact, right to be free from exercizing retaliation for those rights, my right to rear children and right to be free from conspiracies to violate those rights.

6

16. Defendant Arne Duncan is being sued in his official capacity as Secretary of the U.S. Dept. of Education for prospective relief under 28 U.S.C 1361, under Section 504 of the Rehabilitation Act, and in his individual capacity under Bivens.

17. This law suit seeks an order compelling Duncan to compel SISD to provide my children education instruction at home; to make an independent evaluation of the effects caused on school children at SISD by exposure to radiation, to determine the number of school children affected by EHS, and to assess the risks and health effects caused on children including the effects caused on school children's learning ability, *→next page or to compel Duncan Texas Education Agency, TEA, or SISD to do the same, on the ground that Duncan has a duty to provide this relief, and on the ground that failure to provide these relief violates my children, my rights, the rights of other children and parents similary situated including clearly established right to speech, to due process, right to bodily integrity, right to rear children, right to be free from disability discrimination, retaliation for exercising those rights and right to be free from conspiracies to violate those rights. This complaint details Duncan's participation on the violations of those rights.

18. This Complaint seeks an order compelling

7

Duncan to waive repayment of student loans and to return to the IRS about $1,700.00 that the U.S Dept of Education garnished from the IRS, funds that were to be returned to my wife and myself. years ago, and that now, I have to repay to the IRS with penalties, since I owe back income taxes, and since Duncan has notice that these loans were obtained by fraud.

19. this Complaint details how specific, concrete and undisputed evidence on the federal record demonstrates that those loans were obtained by the thomas M. Cooley Law School fraud, and fraud on the Courts, and how the U.S. Dept of Education has tried to collect these funds.

20. In the alternative, this Complaint seeks an order compelling Duncan to waive repayment of the loans because I am severely disabled and on most cases, I make less than $100.00 per month and on the ground that specific, concrete and undisputed evidence on the federal record has established that my EHS was caused by the law school retaliation for denouncing fraud or federal laws. Please see Statement of Interested Parties.

* and to compel Duncan to prohibit using wireless devices on school children with compromised immune systems & EHS, and children with disabilities including learning disabilities.

8

21. Defendant Greg Abbott is being sued in his official capacity as the Texas Attorney General under the Rehabilitation Act; and ADAA

22. This law suit seeks among other relief, an order compelling Abbott to compel Defendant, DARS, and its agents to cease and desist from disability discrimination, falsification of government records, and retaliation for denouncing disability discrimination and their malicious efforts to discredit the harm caused by exposure to radiation, my EHS, and their participation with others to commit fraud on the Courts, on the ground that specific, concrete and undisputed evidence detailed in this Complaint has proven Abbott's participation on the malicious efforts to conceal the harm caused by exposure to radiation including the harm caused on school children by wireless devices used in schools, and the ground that Abbott's failure to intervene violated my right to accommodations to my disability, right to be free from disability discrimination, right to be free form retaliation for denouncing disability discrimination, and for denouncing Abbott's fraud on the Court to conceal the harm caused by exposure to radiation.

9.

23. Defendant, the District Court of Hidalgo County Texas, the 92nd Judicial District, the 92nd District Court hereon, is being sued as a public entity for violations of the ADAA and of Section 504 of the Rehabilitation Act for refusing as accommodation to my disability access to the Court hearings by teleconference; to assign a visiting judge to the divorce case and to settle my claims in good faith.

24. This Complaint details how the 92nd District Court refused to access the Court as accommodation to my disability, despite that specific, concrete and indisputed evidence and claims demonstrating that the denial to allow me appearing by teleconference to hearings by Defendant forms Distinct judge Ricardo P. Rodriguez, war disability discrimination, and retaliation for denouncing disability discrimination and for denouncing that Judge Rodriguez and my wife's attorney, Abel Hinojosa conspired to defraud the 92nd District Court of orders to conceal my wife's abuse and violence against my children, and to conceal the progressive aggravation of my children's health condition by the radiation exposures at school, and details how many Judges in Hidalgo County have engaged in disability discrimination and retaliation and how my claims in the divorce case have been established as a matter of law. Please see Pffs Statement of Interested Parties.

10

25. Defendant, The Court of Appeals thirteenth District of Texas, the 13th Ct. of Appeals hereon, is being sued for violations of the ADAA and of the Rehabilitation Act. this Complaint seeks as relief among other things, an order compelling the 13th Ct. of Appeals senior to assign a visiting Judges to my Petition for Writ of Mandamus which seeks an order compelling the 92nd District Court to assign a senior visiting Judge to the divorce case and to provide the relief sought on my Application for Protective Order; on the ground that specific, concrete and undisputed evidence and claims have demonstrated that the presiding Justices on the 13th Ct. of Appeals have engaged in disability discrimination, and retaliation for denouncing disability discrimination and fraud on the Court to support a dismissal of my appeals and to conceal the harm caused by exposure to radiation, EHS and on the ground that my claims stated on my Application for Protective Order have been proven as a matter of Law. Please See Plaintiffs Statement of Interested Parties

26. The Texas Department of Assistive and Rehabilitative Services, Defendant, is being sued for violations of the ADA and of Section 504 of the Rehabilitation Act. This Complaint seeks among other relief, an order compelling DARS to provide a shielding enclosure, for rehabilitation of my Etts, as recommended by my doctor.

The Statement of Interested Parties and this Complaint detail to specific, concrete and undisputed evidence and claims of agents of DARS disability discrimination, and retaliation for denouncing disability discrimination and for seeking access to the Courts for redness, and details DARS attempts with others to conceal the harm caused by radiation to advance the private agendas of the Executive and others

27. The U.S. Department of Education, the Texas Attorney General, the 92nd District Court, the 13th Court of Appeals, and DARS, the public entities hereon, fund their operations and programs by federal financial funds and assistance and federal funds and assistance provide monetary stability to their operations.

28. Defendants Ricardo P. Rodriguez Jr., and Abel Hinojosa are being sued pursuant to 42 U.S.C 1983 for violations of constitutional rights under color of law, including clearly established right to due process, right to rear children, right to impartial trier of fact, right of freedom of speech, right to be free from retaliation for excercizing those rights and from conspiracies to violate those rights.

29. This Complaint details how Defendant former Judge Rodnsuez and Hinojosa violated my rights when despite specific concrete, and undisputed evidence on the record of my wife's abuse and violence against my children and against myself, of Hinojosa's fraud on the 92nd District Court to obtain orders to enjoin me from withdrawing my children from their school and to prevent that my children be evaluated by experts on the harm caused by the radiation exposures at school, and to conceal the progressine aggravation of my children's health condition to benefit SISD officials, Judge Rodnsuez refused to allow me appearing to hearings by teleconference as accommodation to my disability and refused to recuse himself, despite undisputed evidence of his fraud on the 92nd Court to conceal the harm caused by radiation and to benefit SISD

13

30. Defendant sued in their individual capacities violated my rights and the rights of others similarly situated under color of law, by virtue of their office, and made possible only because the individual Defendants were clothed with the authority of state law, or were clothed with an appearance of official authority, and/or the violations would not be occurred but for the possession of some state authority.

31. Venue. this Division is the appropriate venue for this case. the McAllen Division would be another venue. However, this Complaint names two Judges presiding on the McAllen division as Defendants and two other Judges presiding on the McAllen Division have engaged in the same misconduct, to conceal the harm caused by exposure to radiation and in retaliation* Please See Pff's Statement of Interested Parties.*And witness to this case).

I respectfully request the Court to consider the Brownsville Division as the appropriate venue for this case, to expedite this case and to prevent further aggravation of my children's EHS.

14

32. Unless stated otherwise, whenever in this Complaint it is claimed that named or unnamed individual Defendants committed any act or omission, it is meant: that the named or inamed individuals, or their agents, or their representatives committed such act or omission, and that it was committed with the unqualified authorization of their employer, the named public entities, or that such act or omission was committed in the usual course and scope of employment and/or subsequently ratified by the named public entity with through knowledge of the facts and circumstances of such act or omission.

33. This Complaint details how Defendants named public entities, on the basis, by reason, and solely by reason of my disability denied my requests for disability accommodations and engaged in retaliation for seeking accommodations to my disability and for excercizing my constitutional rights including right to speech, right to access and petition the Courts, right to rear children.

15

34. Immunities

Chief Judge Hinojosa and Judge Ormsby are not immune from this law suit. This Complaint details their participation with named Defendants SISD officials and others to commit fraud on the Courts to conceal the harm being inflicted on school children by exposures to radiation to benefit the insurance and wireless lobby.

35 This Complaint details that this judicial misconduct involves more than cash-for-favors corruption because it amounts to selling the health, minds and bodies of thousands if not millions of school children, in essence selling the future of our country to the best wireless vendor.

36 This Complaint details malicious retaliation and a cruelly irrational antagonism toward our children, exhibiting a serious mental disability which compels the Court to prevent that these triers of fact continue presiding before the Court.

37 This Complaint seeks only prospective injunctive relief against Chief Judge Hinojosa and Judge Ormsby under 28 U.S.C 1361 and under Bivens.

16

38 Defendant 92nd District Court and Defendant the 13th Court of Appeals one not immune from suit. Congress has abrogated the named public entities immunity from suit as it applies to the class of cases implicating the ADAA accessibility to the Courts and to judicial services and functions. Tennessee v. Lane 541 U.S. 509 (2009).

39. This Complaint details how these Defendants violated the ADAA and the Rehabilitation Act when they denied my request to access the Court as accommodation to my disability and to assign visiting judges to my cases and to settle my claims in good faith.

40 Public entities that accept federal funding as is the case here, waive immunity from suit under the Rehabilitation Act.

41 Defendant Greg Abbott is being sued in his official capacity as the Texas Attorney General that receives federal funding and is immunities not immune from violations of the ADAA; and

42 for prospective injunctive relief for violations of my children, my rights and

43 the rights of other similarly situated, which includes an order compelling him to cease and desist from his attempts to conceal the disabilities and harm caused by radiation on school children, on myself and others.

17

44 Defendants forms Judge Rodrisuez, Abel Hinojosa and Arne Duncan are not immune from this law suit. this Complaint details their malicious conduct to defraud the Courts to conceal the harm caused by radiation on school children, and how they conspired to violate my children's and my rights to due process, bodily integrity, right to rear children, right to be free from disability discrimination and retaliation, right to access and petition the Courts, right to impartial trier of fact, right to be free from retaliation for exercising those rights and from conspiracies to violate those rights which are clearly established.

45 Defendant Duncan is being sued in his official capacity under 28 U.S.C 1361 and in every Defendant Rodrisuez and Hinojosa are being sued under 42 U.S.C 1983, on their individual capacity.

46 Defendant DARS is being sued for violations of Section 504 of the Rehabilitation Act and of the ADAA.

4.6.1 This Complaint details Defendants' conspiracy to conceal that the radiation exposures at schools is causing forced medication on children with EHS and to conceal their attempts to silence and retaliate against parents and teachers who denamce how our schools are being used as laboratories to test the harm caused on children by radiation

18

47. I am suffering electrical and chemical hypersensitivities, EHS and CHS, neurological, immunological impairments that substantially limit several major life activities and functions including hearing, speaking, breathing, learning, concentrating, thinking, communicating and working, I have a record of those impairments and I am regarded as having those impairments.

48. Exposure to the radiation emitted by power lines, transformers, electric motors, fluorescent lights, video display screens, cell phones, wireless computers, radar and other wireless devices, cause me pain, visible swelling of face and eyes, rashes and loss of skin, swelling of vital organs, internal bleedings and substantially impairing among other things hearing, sleeping, breathing, learning, concentrating, thinking, speaking, communicating, and working. Exposure to some chemicals and odors cause the same effects. I have been violently ill several times, I have passed out in pain several times, I am in pain all the time. Please See the Physician Statement of Disability issued by the Texas Dept. of Aging and Disability Services stating as diagnosis "Highly sensitive to electricity" and describing some of the functions substantially limited; doctor's letters describing my health condition; and pictures of the visible effects and how the swelling inside the skull is displacing one eye out of its place. this Complaint Exhs. 1A, 1B, 1C, 2A, 2B, 2C, and 2D.

49 On June 6, 2000 my health condition was evaluated at the Environmental Health Center in Dallas, Texas by Dr. William J. Rea, an expert in environmental medicine. After examination and testing, Dr. Rea found me sensitive to electricity and referred me to Dr. Cyril Smith for a second evaluation. The same day, after examination and testing, Dr. Smith confirmed Dr. Rea's diagnosis and identified some of the radiation frequencies that cause me reactivity.

50 On a Decision dated Oct. 23, 2003 the Social Security Administration found my electromagnetic sensitivity a severe impairment, and found that I was unable to perform any of the past relevant work because my ability to work was significantly compromised at all exertional levels due to my non-exertional limitations, and denied disability benefits claiming that according to a Vocational Specialist who lacked medical training and unfamiliar with electrical sensitivities, I could find a job in remote parts of the country. Exh. 3, this Complaint

51   On March 2003, I was involuntarily committed
in error to a mental hospital after my mother was
persuaded to believe that I was neglecting medical care for
my swelling and that the State hospital was able to
cure EHS. I spent the night on the emergency room
with heart pain and breathing problems, the next
morning, Dr. David Moron claimed not knowing
about EHS, and after a few questions concluded that
I was delusional. The next day, Dr. Cannelus Caralampus,
a doctor who claimed studying several cases of EHS
made an evaluation of my mental health concluding
that the only problem I had was to explain to
people that electricity causes me harm. I was released
right afterwards. Records generated by the ER
document a life-threatening heart condition. Please
See excerpts of records. Exhibit      this Complaint

52  On a Decision dated Sept. 23, 2004 a panel of the U.S. Court
of Appeals for the Fifth Circuit recognized my EHS.
Maldonado v. Ashcroft, Case No. 04-40095.

53  On an Order dated May 9, 2008 the 389th State District
Court granted a Motion to Appear by Teleconference to
Judicial Proceedings as accommodation to my disability EHS.
In Re Jesus Mendoza, Cause No. C-013-08-I

21

54  During the year 2000, I lost the ability to work inside a building. By the year 2004, even an hour inside a building caused swelling of face, severe pain and breathing, speech, concentration and memory problems, some with delayed effects. By the year 2008, even a 5-15 minutes inside a building were causing the same effects. With the exeption of some walks around the neishborhood during the year 2011 and walks to the next-door neighbords, I have been home bound since March 29, 2011.

55  I can go inside my home only a few minutes at a time and for many years, I have been staying on a van placed in the middle of the lot. On July 2012, I lost the ability to use a low emission, modified lap top to draft documents. I lost the ability to tolerate an electric fan and an AC radio, I am losing the ability to use a battery operated camera to document my childrens symptoms, my symptoms and the levels of radiation at home.

56  My 3 children are suffering EHS and their condition is progressinely aggravating by the radiation exposures at school. In August 2012, the Israeli Supreme Court ordered the government to determine the number of students currently suffering from EHS. This is another effort to prevent that my childrens EHS becomes as in my case, life-threatening.

57  My children's medical history includes more than 400 pages documenting more than 60 visits to the doctor for each child with the same signs and symptoms of Electrohypersensifinty, EHS, and of the same harm caused by the same radiation reaching students at my children's school, including blood, eye, respiratory and gastrointestinal abnormalities, chronic flue symptoms, swollen membranes, sleeping problems, body aches, headaches, skin rashes, facial swelling and flushing, speech problems on two children and heart rate abnormalities on one child. (Docket 57 Summary of Medical Records, Exhibits K.I, I.B, and K.V: Mendoza et al. v. Sharyland ISD, et al, Case No. M-11-29 S.D. TX. 2011). My children's eyes swellings, black spots and blood lines are similar to my eyes. Exhs.     this Complaint.

58  Some of the more recent aggravation of my children's health condition includes progressive eye deterioration on one child, and a hospitalization on the same child for unidentified gastrointestinal problems after she slept in close proximity to a Wi-Fi transmitter; the doctor has recommended 5 studies for another child, who is visibly underweight, He had seizures while playing an X-Box, and has been monitored: at a cancer clinic for a blood injury that is caused by exposure to radiation; another child has been hospitalized for unidentified stomach pains swelling, has attempted suicide twice, has been evaluated for painful breathing problems and is advising my two other children to avoid using wireless because she is already feeling pain when using those devices. (Docket 98, Parashs 5-13; Docket 97, Exhs. 2.1 to 3.30 Id)

23

59 My 3 children have a history of poor academic performance, bring home failing grades, and spend considerable time in tutoring, which increases the radiation exposures at school, and aggravates their health condition. (Docket 97, Exhr. 2.1 to 2.17; Docket 98, Parash. 14).

60 At several times relevant to this case I have observed my children tremble and moan in pain in their sleep, and to react to surges of radiation with pain, mood swings, aggressivness, hyperactivity, sudden fatigue and sadness.(Docket 98 Parash. 5 I d).

61 According to experts, the brain, eye, and blood are more vulnerable to harm by WI-Fi/cellphone radiation, and some of the health effects caused by these radiation include increased permeability of the blood-brain barrier, nerve damage, eye damage, altered white blood cells and leukemia in school children, impaired motor function, reaction time and memory, headaches, dizziness, fatigue, weakness, insomia, increased calcium flux, induced stress proteins, cancer and DNA breaks. The Bioinitiative Report (2007, 2012); San Fco. Earthlink Wi-Fi Network (2007); Powerwatch.

62. According to experts, symptoms of EHS include eye, respiratory and gastrointestinal reactions, seizures, swollen membranes, flue symptoms, cognitive dysfunction, (memory, concentration, problem solving), balance, dizziness and vertigo, facial flushing, skin rash, chest pressure, abnormal heart beat, depression, anxiety, irritability, frustration, temper, fatigue, sleeping problems, body aches, headaches and ear problems. (Id; Grant, the Electrical Sensitivty Handbook.

24

63. Electrohypersensitivity is an emerging health condition caused by prolonged exposure to radiation that is reaching epidemic proportions. Exh. 8, 9, this Complaint

64. EHS is now recognized by the World Health Organization, (WHO), and is classified as a disability in Sweden and health care facilities with low exposure to electromagnetic fields and radio frequency radiation are available for the EHS. San Fco. Earth link Wi-Fi, Network (2007) Pg 7. The former president of WHO, a medical doctor has declared her EHS. Exh. 5 this Complaint.

65. In Sweden, more than 250,000 people have been diagnosed as EHS, and are considered disabled as the deaf and blind, and local governments pay to have the home of the EHS sanitized, if necessary, through the installation of metal shielding. Disconnected, Popular Science, March 2010, Pg. 56.

66. San Francisco with a population of 744,000 people may have as many as 15,000 (2% of population) who are severely affected, and up to 260,000 individuals (35% of the population) who have moderate sensitivities. Earthlink Pg. 8.

67 EHS can be caused by prolonged exposure to radiation and studies have reported that EHS may be due in part to genetic predisposition. Earthlink Pg. 49. Grant Pg. 28. Exh 6. this Complaint

25

68. On a letter dated Feb. 25, 2013, a recognized scientist, Dr. Magda Havas is imploring those in authority not to make the same mistake made in many schools accross Canada where students exposed to Wi-Fi are now complaining of heart palpitations and feelings of weakness and fatigue in the classroom only to feel well at home during the evening, weekend, and while on vacation. Dr. Havas explains that in one school, several students experienced sudden cardiac arrest, which is becoming increasingly common but poorly known outside a narrow scientific community; that teachers who complain of feeling ill in the class-room with Wi-Fi transmitters are often silenced, and suffer until they are no longer able to tolerate the exposure and go on temporary or permanent sick leave; that a small percentage of students have mild heart abnormalities that can be fatal with excercise combined with exposure to radiation; and that students and teachers who have developed EHS require the same protection given to people with peanut allergies. (Docket 97, Exhs. 6.3 to 6.6, Case No. M-11-29, S.D.TX 2011)

69. The EU Parliament "calls on the member States to follow the example of Sweden and to recognize persons who suffer from electrohypersensitivities as being disabled so as to grant them adequate protections as well as equal opportunities." Exh. 6.1, 6.2, Id.

26

70. On a letter dated March 19, 2013 the American Academy of Environmental Medicine is imploring the Los Angeles Unified School District not to expose school children to Wi-Fi radiation explaining that in recent years members and colleages have reported an increase in patients whose symptoms are reversible by eliminating wireless radiating devices; that consistent emerging science shows that especially children are affected by the increasing exposure to wireless radiation, that only 4 hours of exposure to a Wi-Fi lap top caused DNA damage to human sperm; that in May 2011, WHO elevated exposure to wireless radiation, including Wi-Fi, onto the Class 2b of Carcinogens; that in Oct. 2012, the AAEM issued a public warning about WiFi in schools that stated: "Adverse health effects from wireless radio frequency fields, such as learning disabilities, altered immune responses, and headaches, clearly exist and are well documented in the scientific literature. Safer technology, such as use of hard-wiring is strongly recommended in schools"; that the WIFI in schools are typically hundreds of times more powerful than the home consumer WiFi; and that the AAEM is to teach doctors how identify patients whose symptoms can be reversed by eliminating exposure to WiFi, cell Phone and other forms of radiation in the home. (Docket 97, Exhs. 6.7 to 6.9. Id).

27

71. On three letters to the Los Angeles Unified School District Board of Education, 3 recognized scientists explained the dangers of exposing children to WiFi radiation, the need to go wired instead of wireless to protect subpopulations that are more sensitive to these exposures, and denouncing how powerful lobby entities have a vested interest in misleading the public to believe that their radiation products are safe for our children, stating in part:

72. that there is good reason to believe that the elevated rates of cancers near RF towers are linked to DNA damage caused by RF, that this calls for a need to limit exposure, especially for children who are growing rapidly and undergoing rapid cell division with greater probability of DNA damage. Martin Blank, Ph. D.

73. That there are thousands of papers that document adverse health and neurological impacts of EMF/RFR; that children are more vulnerable than adults, and children with chronic illnesses and/or neuro developmental disabilities are even more vulnerable; that EMF/RFR can exert a disorganizing effect on the ability to learn and remember and can also be destabilizing to immune and metabolic function; that this will make it harder for some children to learn, particularly those who are already having problems in the first place;

28

that powerful industrial entities have a vested interest in leading the public to believe that EMF/RFR, which we cannot see, taste or touch, is harmless, but this is not true. Martha Herbst PhD, MD.

74. that contrary to some public statements, peer-reviewed studies consistently conclude adverse biological and health effects by exposure to radiation, that there is more than enough evidence now for the public health policy makers and the scientific community in this country to make a stand and prevent unecessary harm, as is beginning to happen in Europe, that in many ways the solution is very simple, to use wired technologies in schools instead of wireless ones.

Jeremiah M. Eckhaus, MD. ABHM. (Docket 97 Exhs. G.10 to G.17, Mendoza v. Sharyland ISD. Case No. M-11-29)

75 Some of the statements of scientists advising against WIFI in schools include:

"Wireless systems cannot be regarded as safe in schools, but must be deemed highly hazardous and unsafe for children as well for staff." Dr. Olle Johansson.

29

76. "Microwave radiation displays in children life threatening short and long term effects. the short term effects are experienced as headaches, dizziness, nausea, vertigo, fatigue, visual and auditory distortion (voices change volume, ringing ears), abnormal heart rates (racing heart rate or tachycardia, erratic heart rates) memory loss, attention deficit (trouble concentrating while in class), skin rash, hyperactivity, anxiety, autism, depression, night sweats, insomia (microwaves affect melatonin levels), learning impairment, behavioral changes etc. the long term effects are expressed as stress, a weakened immune system, seizures, epilepsy, high blood pressure, brain damage, diabetes, fibromyalsia, infertility, birth defects, DNA damage, leukemia, cancer, etc." Dr. Christos Georgiou.

77. "Wireless technologies have no place in schools. I strongly recommend that where they exist, they be replaced by fiber-optic cable and hard wiring" Dr. Samuel Milham.

78. "They do not know that exposure limits are based on pseudo-science thought to create the necessary legal frame for a telecommunication industry that wants to make use of the new techology without being hampered by medical considerations" Dr. Franz Adlkofer.

30

79. "The ongoing invasion of radiation caused by WI-FI transmitters and other radiofrequency sources represents a denial of scientific evidence and extreme myopia. WI-FI systems are being senselessly installed even for young children. Society is performing an extremely dangerous and suicidal experiment with them." "the problems of depression, attention deficit and insomia in children are increasing worldwide at an alarming rate." Dr. Alfonso Balmori.

80 "It is far too late for timely intervention, but failure to act now with conviction and protect our children could lead to a national health disaster." Dr. Erica Mallery - Blythe

81 "If serious and responsible decisions are not taken in due time, the price in terms of future generations public health can be very high." Dr. A. de Salles.

82. "There is a major legal difference between an exposure that an individual chooses to accept and one that is forced upon a person, specially a dependent, who can do nothing about it. WiFi must be banned from school deployment." Dr. Dand O. Carpenter. (Exhs 6.18 - 6.29 Docket 97, Mendoza et.al. v. Sharyland ISD et al., Case No. M-11-29, S.D Tx.2011)

83 On Dec. 22, 2010 I submmitted to the
Deputy Clerk in Charge of the Mcallen Division
a Request to Access the Court asking
Ms. Silvia Martinez to assign a visiting
judge to an impending law suit against the
Sharyland Ind. School District on the ground
that my disability was caused in retaliation for
denouncing judicial corruption, and has been
aggravated by the disability discrimination
and judicial misconduct of the Magistrate and
District Judges presiding before this Court.
(At the time I was unaware that U.S District
Judge, Micaela Alvarez was assigned to the
Mcallen Division)

84        The Request explains that my children
are exhibiting symptoms of my condition and
school officials have engaged in disability
discrimination and retaliation to deny my
requests to accommodate my childrens
disability, and explains that impending
litigation include a motion for immediate
injunctive relief to prevent that my children
suffer irreparable harm, and assigning a
visiting Judge obviates the delay caused by
recusal motions.

32

85 I requested Ms. Martinez to submit to the Judge assigned to hear any lawsuit in which my children are parties, the Statement of Interested Parties, Exhibit "A" to Objections to U.S. Magistrate Jude Peter Ormsby recommendation to deny my Motion to Recuse U.S District Chief Judge, Ricardo Hinojosa, Docket 28 to Maldonado v. the Commissioner of the Social Security Michael Astrue, Civil Case No. M-05-133 (S.D. TX 2005). Pff's Statement of Interested Parties to this Complaint

86 The Request to Ms. Martinez includes evidence of SISD officials attempts to conceal that at my children's school, students are being exposed to levels of radiation that cause severe physical harm including blood, eye and brain damage, and includes pictures of my children's eyes showing swelling, black spots and bloody lines caused by the radiation exposures at school. Exh 7 B. this Comp

87 the Request points to specific, concrete and conclusive evidence on the record of Chief Judge Hinojosa, Judge Ramos, Judge Crane, the Texas Attorney General and others fraud on the Courts to discredit the harm caused by exposure to radiation to protect the interests of industries who use radiation on products and services. * Ms. Martinez filed the Request addressed to her on the case of Maldonado v. Astrue Civil Case No. M-05-133 (S.D. TX 2005) Docket 34. * See next 4 Pages

33

88.  The rulings of U.S. Magistrate Judge Dorina Ramos
in Jesus Mendoza Maldonado v. the Thomas M. Cooley
Law School et al, Case No. 14-99-77 (S.D.TX. 1999), the
rulings of Judge Ramos on the Cooley case, hereon,
document how to recommend transfering the Cooley
case to Michigan, Judge Ramos declined to consider
specific, concrete and undisputed evidence and claims of the
Cooley Defendants fraud of federal funds and retaliation
within the State of Texas; of the physical harm caused by the
retaliation, an electrical sensitivity, EHS, that impaired my
ability to travel long distances; and of the Cooley Defendants'
false statements to the Court in support of their motion
to change venue. Exh.    to Plaintiffs Documents in Support of
Preliminary Injunction detail Judge Ramos' rulings on the Cooley Case.
89  The federal record documents how after the case was
transferred, U.S. District Chief Judge Robert Holmes Bell assigned
the case to U.S. Magistrate Judge Joseph Scoville, a professor
at the Cooley law school, who warned me under penalty of
sanctions, not to raise my disability during the litigation;
how after my claims of fraud and retaliation were established,
Judge Scoville denied a motion for protection from the Cooley
Defendants' attempts to take advantage of my disability by
scheduling depositions my health did not permit to attend, and how
Chief Judge Holmes Bell dismissed the case as a sanction despite
undisputed evidence and claims of the Cooley Defendants fraud on
the Court. Maldonado v. T.M. Cooley Law S. Case No. 5:01cv93 (W.D. MI, 2001).
Exh.    Id.
                              34

90. The federal record documents how Judge Ramos, to support a recommendation to dismiss as frivolous claims of a retaliatory electronic aggression against my children, against myself and others, Judge Ramos impaired my ability to present expert witnesses, declined to consider specific, concrete and undisputed evidence of ongoing retaliatory harassment, and of attempts to frame me into a crime by identified FBI agents; and fabricated testimony to discredit the legitimacy of my claims and my mental stability.

91. The federal record documents how U.S. District Chief Judge Ricardo H. Hinojosa declined to consider specific, concrete evidence of Judge Ramos' misconduct to discredit the harm caused by the retaliatory electronic surveillance and adopted Judge Ramos' recommendation and dismissed the case. Maldonado v. Ashcroft, Case No. M-03-038 (S.D.TX. 2003); U.S. Ct. of Appeals for the fifth Circuit Case No. 04-40095; Maldonado v. Gonzales, U.S. Supreme Court, Case No. 04-9908. Complaints of Judicial Misconduct Nos. 04-05-372-0089 and 90

Chief Judge Hinojosa and Judge Ramos ruling on the Ashcroft-Gonzales case are detailed on Exhibit    to Plaintiff's Documents in Support of Preliminary Injunctions, and on Plaintiff's Statement of Interested Parties Exhibit A Pgs 1 to 6.

35

92 The federal record documents how U.S. District Judge Randy Crane, to support a dismissal of a case seeking a shielding enclosure for rehabilitation of my EHS, and of a case seeking disability accommodations to my EHS to access the university's library, Judge Crane declined to consider specific, concrete and undisputed evidence and claims of the Texas Dept of Assistive and Rehabilitative Services, DARS' falsification of records to discredit my EHS and mental stability, adopted the false statements of the Texas Attorney General, Greg Abbott, and fabricated statements to discredit my EHS and mental stability.

93 Jesus Mendoza v. Dr. David Moron, et al, Case No. 7:05 cv 184; U.S. Court of Appeals for the fifth Circuit Case No. 06-40671; Jesus Mendoza v. the University of Texas Pan-American, Case No. M-05-408 (J. D. TY. 2005); U.S. Court of Appeals for the fifth Circuit, Case No. 06-41453.

94. Judge Crane's rulings on the Moron and UTPA case are detailed on Exhibits          to Plaintiff's Documents in Support of Preliminary Injunction.

36

95 The record of Jesus Mendoza Maldonado v. Michael Astrue, Commissioner of the Social Security Administration, Case No. M-05-133 (S.D. TX. 2005) documents how U.S Magistrate Judge Peter Ormsby to support a recommendation to deny disability benefits for my EHS, attempted to reverse the Administrative Law Judge finding that my electromagnetic sensitivity is a severe impairment; declined to consider the opinion of doctors who examined and diagnosed my EHS; adopted the opinion of doctors unfamiliar with EHS who never examined my health condition and who are in the payroll of the same entity that falsified the record to discredit the legitimacy of my disability, EHS, declined to consider specific, concrete, and undisputed evidence of the Commissioner's falsification of the record and false statements, adopted the Commissioner's false statements, and the opinion of a lay witness that I could find work in deserted areas, and fabricated evidence to discredit the legitimacy of my EHS and mental stability, and recommended granting the Commissioner's one paragraph Motion for Summary Judgment.

96. The same record documents how Chief Judge Hinojosa declined to consider specific, concrete, and undisputed evidence of Judge Ormsby misconduct to discredit the harm caused by exposure to radiation, EHS, and adopted the recommendation to dismiss the case pending before the Court, since Nov. 30, 2010 are my objections to deny motion for reconsideration, Dicket 32. The rulings on the Astrue case are detailed on Exhibits to Pff's Docs in Support of M for Preliminary Injs.

37

97. On Dec. 29, 2010 U.S. Magistrate Judge Peter E Ormsby denied the Request on the ground that federal courts do not rule on hypothetical matter and on the ground that I could reassert the request if the planned law suit was filed in this Court. Case No. M-05-133, Docket 35.

98. On Feb. 4, 2011 I filed a law suit against SISD and others and a Motion for Temporary Restraining Order seeking among other things an Order compelling SISD to follow the doctors order to seat my children not in close proximity to sources of radiation and to transfer my children to another school. Mendoza v SISD et al. Dockets 1 & 2. See Exhs. 7, 7A this Complaint

99. The same day I filed a Motion to Assign a Visiting Judge to the case on the ground that the conduct of the defendants in the case was similar to the Judges presiding this Court. (At the time, I was unaware that Honorable Micaela Alvarez was assigned to this Division).

38

100. My Motion to Assign a Visiting Judge
to the Case states that discovery will be
aimed to determine the reliance of SISD's
Defendants on the antagonism of these judges
toward myself, and to whether they have
participated directly or indirectly in
malicious satellite tracking and stalking
on myself as retaliation for denouncing
their misconduct, and explains that both
Judge Ramos and Judge Ormsby have
recused themselves from the prosecution of
one of their employees accused of using
government computers to commit stalking
by satellite. (Local US Marshal Official
Admits to fraud, the McAllen Monitor,
Jan. 6, 2011 at 1'A.)

101 The Motion to Assign a Visiting Judge
resubmits the Request to Access the Court *
filed on Mendoza v Astrue Civil No. M-05-133
Docket 34, including Exhibit A (414-448)
~~Exhibit~~ Statement of Interested Parties

* (that the Clerk of the Court, Mr. Silva Martinez)

39

102   the case was assigned to Chief Judge
Ricardo H. Hinojosa who in turn reassigned
the case to Judge Ormsby.

103.   On An entry dated   2/07/2011 states:
"*FILED IN ERROR: ORDER for Initial
Pretrial and Scheduling Conference and Order
to Disclose Interested Persons. Initial
Conference set for, 4/11/2011 at 02:30 PM
before Chief Judge Ricardo H. Hinojosa.
parties notified. (bgarces, * Modified on
2/7/2011 (b garces).(Entered: 02/07/2011)
Docket 5.

104.   In response to my inquiry a Clerk of the Court
explained that the entry was for another
case. At no time did Judge Chief Hinojosa scheduled similar
motion on my case nor a Rule 26 hearing
105   Judge Ormsby presided on the hearings
on my Motion for Preliminary Injunction and
TRO on April 7, 2011 and again on April 13,
2011. At the end of the hearing on April 13,
2011 Judge Ormsby stated that the Motion
to Assign a Visiting Judge was a Motion to
Recuse.

40

106 On Feb. 4, 2011 I filed pro-se and in behalf of my three minor children a law suit against Sharyland Independent School District, SISD, and against former SISD Superintendent, Scott B. Owings, assistant Superintendent Yasmina Nye, former President of SISD Board of Trustees, Dr. Nael O. Garza, Board members Ricky Longoria, Fernando Ramirez and against former Board member Suzanne Peña in their personal capacities, SISD officials hereon. Jesus Mendoza et al., v. Sharyland Independent School District et al., C.A. 7:11-cv-00029 (S. D. TX. McAllen Division).

107 I brought the law suit to prevent further aggravation of my children's health condition and to prevent that their electrical sensitivity, becomes, like my electrical sensitivity, life-threatening, and after in retaliation for denouncing that school children are being exposed to dangerous radiation, and for denouncing SISD officials tampering and falsification of government records to conceal the dangerous radiation, disability discrimination and violation of parental rights, SISD officials refused to follow the doctor's directions, to transfer my children to another school, and to provide education instruction at home.

41

108 Plaintiffs Motion for Temporary Restraining Order, TRO (docket 2), Motion for Preliminary Injunction (Docket 6), 1st Amended Complaint (Docket 13), Supplement to Preliminary Injunction (Docket 26), and Documents in Support of Motion for Preliminary Injunction (Docket 32), detail how school children at John H. Shary Elementary are being exposed to dangerous radiation — to 3 radiation carcinogens, to Extremely Low Frequency, ELF, to Radio Frequency/microwave, RF/MW, and to Dirty Electricity at occupational levels, at power levels exceeding the federal safety limits, and to levels of radiation that cause among other things, learning and behavioral impairments, and brain, eye, blood, and DNA damage, electrical sensitivities, weakening of the immune system, increasing by 500% the risk of cancer within the children's life time, and increase by 450% the risk of dying to children battling life-threatening disease; detail how these radiation exposures cause greater harm to children with compromised immune systems and electrical sensitivities, and detail how these exposures are responsible for the high rate of student and teacher sickness, absenteeism, and poor academic performance, for the aggravation of my children's electrical sensitivities, for their impaired learning ability, and for the swelling, black spots, and bloody lines on my children's eyes. Docket 2, Pgs. 1-9 and Exhibits; Docket 6, Pgs. 1-9 and Exhibits; Docket 13, Paraghs. 15-27, 35, 43, 44, 49, 50, 54-59, 62-67, 77-81, 88, 109-115 and 120; Docket 26, Pgs. 1-4 and Exhibits; Docket 32 Pgs. 1-17 and Exhibits, Appendix. 20.

42

109 The same filings detail the attempts of SISD officials
to conceal that the radiation exposures at school are
responsible for the high rate of student and teacher
sickness, for the high rate of absenteeism and poor
academic performance, including removing from the
grievance record:

108 Evidence demonstrating that the operation of
power lines, substations/transformers, electric motors,
fluorescent lights, WI-Fi transmitters, wireless
computers, cell phones and walki-talkies within 10
feet of seating areas is exposing students and teachers
to dangerous radiation — to 3 radiation carcinogens,
to occupational levels of Dirty Electricity, to
RF/MW radiation exceeding 25,000 nW/cm² and
to ELF radiation exceeding 40 mG. and the federal
safety limits. Docket 6, Pg. 6 and Exhibits; Docket 13, Paraghs.
52-55; Docket 26, Pg. 2, Exh. 8; Docket 32, Petition, Pg. 6,
12, Exhs. 6, 7 and 8; Docket 32, Item 7, Exh. 8, 9 this Comp

111 A cite to a Texas Court case finding malicious attempts to
expose school children to 6-10 mG of ELF radiation, that imposes
on SISD officials a duty to measure and monitor, and a duty
to protect school children from exposures to harmful radiation.
Houston Lightning & Power Co., v. Klein Ind. School District,
439 S.W.2d. 508 (Tx. Ct. App. 1987); Docket 6, Pg. 6 ;
Docket 13, Paragh. 79; Docket 32, Petition Pgs. 1, 2.

43

112 Evidence documenting that the same kinds of radiation reaching children at school causes on adults among other things cognitive dysfunctions and brain, eye, blood, and DNA damage, increases by almost 40% the risk of breast cancer, and has caused severe physical harm to police officers. Docket 6, Pg. 5, Docket 13, Paraghs. 50, 76-81; Docket 32 Petition, Pgs. 1, 2 and 5. Exhs 8, 9 this Comp.

113 Evidence documenting that exposure to one kind of radiation reaching children at school increase the risk of brain and breast cancer, leukemia and Alzheimer's disease, and documenting that the incidence of diseases related to exposure to radiation has increased among children under 15, that disease of the brain and nervous system rose 28.6%, while one of the most common forms of leukemia increased by 23.7%. Docket 32, Pgs. 4-8. Exh. 8, 9.

114 Scientific opinion that sources of funding bias the analysis and interpretation of research findings towards rejection of evidence of possible public health risks, and that the Precautionary Principle shifts the burden of proof from those suspecting a risk to those who discount it. Docket 13, Paragh. 46; Docket 32 Petition Pgs. 4, 5, Exhs. 9a, 9b. - Exh 8, 9.

115 Attempted to remove from the grievance record cites to peer-reviewed scientific studies that have proven beyond reasonable doubt that exposure to levels of radiation below the levels reaching children at school cause among other things, learning and behavioral impairments, brain, eye, blood and DNA damage, the weakening of the immune system predisposing catastrophic disease and increase by 500% the risk of o several types of cancer within the children's life time, and increase by 450% the risk of dying to children battling life-threatening disease. Docket 13, Parashs. 50, 51. Docket 32, Petition, Appendix 20. Exh. 8, 9 this Complaint

45

116 The same filings detail the attemps of SISD officials to conceal the harm caused on my children by the radiation exposures at school and their electrical sensitivities including removing from the grievance record.

117 Scientific opinion that electrical sensitivities can be inherited, and that schools should accommodate children suffering electrical sensitivities. Docket 13, Parash. 46; Docket 32 Petition Pgs. 4,5, Exhs. 9a,9b.

118 Scientific opinion describing the symptoms of my children's electrical sensitivity, explaining that children are more sensitive to the microwave radiation emitted by the schools' Wi-Fi, that wireless computers expose more of the body to this type of radiation than do cell phones, and describing how some governments are taking precautionary measures to protect children from this radiation Docket 13, Parash. 63; Docket 32, Petition, Pg. 4.

119 Scientific opinion describing how the same microwave radiation inside school causes the same symptoms of my children's electrical sensitivities, including headaches, drowsiness, loss of vision, concentration and memorization, that electrosensitivities already bother 10% of the world population and is rapidly increasing. Docket 32, Exh. 3, Pg. 3.

120 The same filings detail the attempts of SISD officials to conceal the aggravation of my childrens electrical sensitivity, and their retaliation against my children and against myself for denouncing the school's dangerous radiation including:

121 Denying my requests to present expert testimony in support of my claims that the radiation exposures at school are aggravating my childrens electrical sensitivity. Docket 13, Parashs. 37, 63, 84; Docket 6 Pg. 4; Docket 32, Petition, Pg. 8.

122 Denying my requests for help to make measurments of radiation on my children's seating areas; Docket 6, Pg 4; Docket 13, Parash. 61, 75; Docket 32, Petition Pg. 7.

123 Denying my requests to disclose the power levels of radiation emitted by the devices used in close proximity to school children, Docket 13, Parash. 63; Docket 32, Petition Pg. 8.

124 Denying my requests to disclose the location of several 50,000-100,000 Watss tranmitters operated on SISD schools, which radiation has caused physical harm to firefighters. Docket 13, Parash. 61, Docket 32, Petition Pg. 8.

125. Removing from the grievance record medical records including the doctor's letters requesting that my children not be seated directly under the light or in close proximity to sources of radiation, my requests to follow the doctor's directions, to transfer my children to another school and to provide education instruction at home, and denials.

126. There documents were submitted to SISD Board of Trustees along with my requests to accommodate my children and my disability on the ground that my children were exhibiting symptoms of harm caused by radiation and electrical sensitivity, on the ground that after exposure to radiation my children complain of pain, appear distressed, and get irritated for no apparent reason, specially when their faces are swollen; on the ground that my children's eyes are always spotted, glassed and at times bloody; on the ground that one child has been evaluated for heart, sleeping, and stomach problems; that my 5 year-old child complains often of pain on feet, legs, hands and arms, and has said feeling pounding pointing to her heart and was exhibiting symptoms of dyslexia, cries and refuses to go to school when her face is swollen, that my 9-year old son has vision problems, appears disoriented, suffers of white blood cell abnormality and abnormal weight loss. Docket 13, Paraghs. 69, 71, 72, 74, 75. Docket 32, Petition Pgs. 10, 11, 16, Exhs. 1, 1a, 1b, 1c, 2, 3, 4, 4a, 5, 5b, 6a, 6b, 6c, 6d, 7a, 7b, 7c, 7d.

127 Denied my requests to disclose the real, unaltered grades of my children, the schools real unaltered academic performance, the complete number of student and teacher reporting sickness, and my request to produce their criminal records. Docket 13, Parashs. 21, 115, 116, 119, 150; Docket 22, Petition Pgs. 11, 12, 15, 16,

128 Denied in 5 occasions my requests for accommodations to my disability to access and comment on public school board meetings and on two occasions to participate on parent/teacher meetings. Docket 13, Parashs 38, 41, 83, 85, 86; Docket 32, Item 9.

129 Removed from the grievance record a doctor's letter explaining that I am suffering from severe hypersensitivities to chemical fumes and odors along with electromagnetic sensitivity, and requesting to authorize phone conferencing, because I am unable to tolerate the building, and that I lose concentration and have speech difficulties. Docket 32, Exh. 14.

130 Attempted to discredit the legitimacy of my electrical sensitivity and mental stability. Docket 13, Parashs. 58, 66, 73; Docket 32, Item 1.

131  the 1st Amended Complaint (Docket 13), and the Documents submitted in support of Preliminary Injunction (Docket 32), detail how despite undisputed evidence and claims demonstrating that SISD officials are exposing school children to dangerous radiation, of SISD officials tampering and falsification of the grievance record to conceal the dangerous radiation and their retaliation against my children and against myself, the SISD Board of Trustees denied the grievance and joined in the retaliation, denying my requests to follow the doctor's directions to seat my children not in close proximity to sources of radiation, to transfer my children to another school, and to provide instruction at home despite the progressive aggravation of my children's health condition and in violation of my children's and my statutory and Constitutional rights. Docket 13, Paraghs. 69-75; Docket 32, Items 1 to 10; Petition Pgs. 1-17 and Exhibits.

132  The same filings detail SISD officials' ongoing retaliation against my children and against myself, and how in response to another request to follow the doctors' directions, seated my children closer to sources of radiation aggravating their health condition. Docket 13, ¶118; Docket 32 Items 10, 11, 13.

50

133   5150 officials motion to dismiss and response to my motions for injunctive relief (Dockets (9, 22) do not engage dispute or deny evidence and claims showing that they are exposing school children to dangerous radiation, and that in retaliation for denouncing their attempts to conceal the dangerous radiation at school, they refused to follow the doctor's directions to seat my children not in close proximity to sources of radiation, and denied my requests to transfer my children to another school, claiming instead that I do not have the right to represent my children pro-se, that my claims are frivolous, and that I have been warned by the fifth Circuit with sanctions and ask the Court for sanctions and attorney fees to deter future frivolous litigation, and that my wife does not believe that my children have a disability related to electricity.

51

134 Judge Ormsby did not rule on my Motion to Assign a Visiting Judge to the case and on April 7, 2011 on a hearing before Judge Ormsby on my motions to compel SISD officials to follow the doctors directions to seat my children not in close proximity to sources of radiation and to transfer my children to another school to prevent further aggravation of their health condition, SISD officials did not deny that without providing notification, they interviewed my wife and attempted to persuade her to impeach my mental stability, saying instead that they are not claiming that I am mentally insane, but that I do not have the right to represent prove my children. (I refer to my wife for simplicity to Silvia Mendoza, the mother of my children. Silvia and my 3 children live at my home, and Silvia filed for divorce on June of 2011).

135. With the help of a translator, my wife testified that she opposes transferring the children to another school because my children are healthy.

136 On crossexamination, my wife admitted testifying before this Court in another case how my children react in pain when radiation increased at home, and testified having only a six grade education. * next page.

137 The principal of my childrens school testified that she did not know if my children passed their TAKS and claimed not following the doctors directions because I did not submitted a request for that year.

52

\* Judge Ormsby did not allow me to inquire as to the reasons my wife sided with SISD officials to impeach her credibility, including her adultery and violence against my children and against myself

138 On April 13, 2011 Dr. Samuel Milham, an expert in radiation exposures at school, testified to the legitimacy of electrical sensitivities, that the swelling, black spots and bloody lines on my children's eyes are caused by the radiation exposures at school, and that my children needed to be transferred to another school to prevent aggravation of their health condition.

139 Judge Ormsby did not allow me to place on the witness stand the president of SISD Board of Trustees (now former) Dr. Noel O. Garza and former SISD superintendent Scott B. Owings, named Defendants on the ground that Dr. Garza was not a medical doctor but a dentist.

140 At no time during the two hearings, SISD officials engaged, denied or disputed evidence and claims demonstrating that they are exposing children to dangerous radiation and of their attempts to conceal that they are exposing school children to dangerous radiation or of their retaliation, and admitted not measuring the power levels of radiation reaching school-children.

141 On a Report and Recommendation to deny my Motion to Assign a visiting Judge to the Case, Judge Ormsby declines to engage specific, concrete, and undisputed evidence on the record demonstrating fraudulent rulings to conceal the harm caused by exposure to radiation and to conceal their retaliation ( Paragraphs this Complaint ) stating:

142 "As explained in addressing Plaintiff's recusal motion in Astrue, Plaintiff's principal error is that he confuses his disagreement with court rulings with evidence of bias and prejudice." (Docket 42 Pg. 2) "Plaintiff should not be permitted to force a judge's recusal by making unsupported accusations." (Id. Pg. 3).

143 Omitting the fact that no Defendant or Court has ever specified any conduct that may be deemed frivolous, nor considered, engaged, disputed or denied specific, concrete evidence on the record of judicial fraud on the Courts to conceal the harm caused by exposure to radiation and retaliation, Judge Ormsby wrote: "the Fifth Circuit relied on this same reasoning in rejecting Plaintiff's argument that Magistrate Judge Ramos should have been recused for bias in one of his prior cases."

144 Omitting the fact that at the end of the hearing on my motion for injunctive relief Judge Ormsby stated that the motion to assign a visiting judge, was a motion to recuse, stated that I said that the motion was a motion to recuse. (Id Pg 2).

54

145    The Report and Recommendation to deny my motions to compel SISD officials to follow the doctor's directions and to transfer my children to another school declined to consider and disputed evidence and claims on the record demonstrating the school's dangerous radiation, demonstrating SISD officials attempts to conceal the school's dangerous radiation, demonstrating SISD tampering and falsification of government records to conceal my children's electrical sensitivities and the aggravation of their health condition, to conceal their legal duty to protect school children from exposures to radiation, and to conceal their retaliation against my children and against myself for denouncing the school's dangerous radiation; declined to consider my children's claims of retaliation and my claims of disability discrimination, violations of due process, of the right to rear children and of the right to be free from retaliation stating: "Those allegations are not summarized here since they are not directly relevant to the pending motion for a preliminary injunction." (Docket 41, Pg. 4, note 5; Pg. 7, note 10; and Pg. 13).

146    The Report and Recommendation concludes that I failed to show a likelihood that I will be able to prove that my children suffer from a disability and that my children's school has dangerously high levels of radiation that adversely affect their health; (Docket 41, Pg. 14) and adopted SISD officials claims that my "children are in all respects healthy, happy children", that my children are not only "not in imminent danger of injury" but moving them would be "disastrous." Docket 41, Pg. 23.

55

147  On the Report and Recommendation to deny my motions to compel SISD officials to follow the doctor's directions and to transfer my children to another school Judge Ormsby omits:

148  that on the hearing on my motions, SISD officials did not deny their attempts to manipulate my wife to impeach my mental stability, did not dispute the legitimacy of my electrical sensitivity, and admitted not making radiation measurements inside my children's school, because of cost.

149  that my wife admitted testifying before the Court in another case how my children scream in pain when levels of radiation increased at home;

150  that I was not allowed to impeach my wife's credibility, by inquiring to her adultery and violence against my children and myself, the reasons she sided with SISD officials to testify that my children are healthy children.

151  that I was not allowed to place on the witness stand the former SISD superintendent, Scott B. Owings and the former president of SISD Board of Trustees, Dr. Noel U. Garza to support my claims that their refusal to follow the doctor's directions and transfer my children to another school was retaliation for denouncing the school's dangerous radiation;

56

152. The Report and Recommendation to deny injunctive relief finds my reliance in Houston lighting & Power Co. v. Klein Indep. School District misplaced, and omits that in Klein the Court found malicious attempts to expose school children to one radiation carcinogen, omits that Klein imposes a duty to measure, monitor, and protect school children from radiation exposures; omits concrete, specific and undisputed evidence and claims demonstrating that at my children's school, students and teachers are being exposed to 3 radiation carcinogens, that SISD officials removed the citation to Klein from the grievance record, demonstrating SISD officials' tampering and falsification of government records and other efforts to conceal that the radiation exposures at school are aggravating my children's electrical sensitivities and health condition, to conceal that these radiation exposures cause learning and behavioral problems, brain, eye, blood and DNA damage, increase by 500% the risk to several types of cancer during the childrens' life-time, and increase the risk of dying to children battling life-threatening disease, and to conceal that these radiation exposures are responsible for the high rate of student and teacher sickness, and absenteeism, and for the poor academic performance. Docket 41, Pg. 22.

153 The Report and Recommendation to deny my motions to prevent further aggravation of my children's health condition omits undisputed material and relevant evidence and claims on the record and mistates the facts including:

154 That the principal of the school testified that the school did not have a letter with a request to follow the doctor's directions for the current year (Docket 41, Pg9) The Request and the doctor's letter for the current school year were part of the documents removed from the grievance record to conceal that in retaliation for denouncing the school's dangerous radiation, SISD officials refused to follow the doctor's directions, refused to transfer my children to another school, and to provide education instruction at home. Docket 32, Petition Exhs. 6a, 7c; Parashi. this Complaint.

155 Also, undisputed evidence on the record demonstrates SISD officials ongoing retaliation against my children and against myself, that in response to another request to follow the doctor's directions to seat my children not in close proximity to sources of radiation, SISD officials seated my children closer to sources of radiation aggravating their health condition. Documents in Support of Preliminary Injunction, Docket 32, Item 10 B.

58

156 That it is impossible to know whether my children's eye abnormalities are caused by electrical sensitivity or something else. (Docket 41, Pgs. 17, 18)

157 Judge Ormsby omits undisputed evidence and claims that blood, eye, and testicles are more sensitive to radiation, that "microwave damage to the eye can present under many guises such as macular degeneration, different forms of retinopathy, vitreous detachments, cataracts and a generalized deterioration in visual acuity." Dr. Gerald Goldberg. (Docket 13 Parash. 80)

158 Judge Ormsby omits other undisputed scientific opinion that change in membrane of the eye occurs after exposure to 15 uW/cm² (Docket 13 Parsh. 81), and that SISD officials falsified the record to conceal that school children are being exposed to microwave radiation in excess of 25,000 nW/cm; 25 uW/cm². Parash, this Complaint (Docket 2 Parash 8).

159 Pictures of my children's eyes show swelling, black spots and bloody lines similar to my eyes. Exhs.   This Complaint

160 Judge Ormsby omits undisputed evidence and claims that SISD officials refused further measurments of radiation inside the school because "A dosimetry model is predictive of the pattern of injury that one would expect to find and clearly shows what type of damage to expect. Dr. Gerald Goldberg. Docket 13, Parajh. 88.

59

161 that my children passed their TAKS examinations, that my children's grades are in par with other students, that there is virtually no evidence that my children are not receiving their real grades, and that there is a myriad of reasons why a particular child may be struggling with school work. (Docket 41, Pg. 9 note 13; Pg. 16 note 23)

162 During the hearing, the former principal of the school testified not knowing if my children passed their TAKS, and undisputed evidence on the record demonstrates my children's failing grades (Docket 26, Exhs 9a to 9j); that SISD inflates grades to pass failing students (Docket 32 Item 10; Petition, Pgs 15, 16); that SISD officials refused to disclose my children's real unaltered grades and falsified the record to conceal that exposure to levels of radiation many times below the levels reaching school children cause among other things brain damage and learning impairments. Parghs 108-115 this Complaint

163 Also, Judge Ormsby omits undisputed scientific opinion that the symptoms caused by exposure to radiation include lack of concentration and memorization, that the mental capacity in terms of cognitive disorders is verifiable heavily affected by chronic exposure to radiation, that epidemiological studies and exposure trials with volunteers and animals shows this clearly. Johnson-Liakouris, 1998; Mils 1998; Santini, 2001, 2002, 2003; Navarro-Oberpld 2003 (Docket 13 Parash. 110).